IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY D. INGRAHAM, an Individual,<br>                  Plaintiff,<br><br>vs.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,<br>                  Defendant. | Civil Action No. 12-682<br><br>Judge Cathy Bissoon<br>Magistrate Judge Maureen P. Kelly<br><br>Re: ECF No. 16 |

**REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

Plaintiff Jeffrey D. Ingraham ("Plaintiff" or "Ingraham") filed this suit under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, et seq., ("ERISA"), challenging the amount of disability payments he received pursuant to the terms of a long-term disability policy issued to his former employer by Defendant The Prudential Insurance Company of America ("Defendant" or "Prudential"). Prudential has filed a Motion for Judgment on the Pleadings, ECF No. 16, raising the policy's three-year statute of limitations as a complete defense to this action. For the following reasons, and upon careful consideration of the briefs filed in support and in opposition thereto, it is respectfully recommended that the Motion for Judgment on the Pleadings be granted.

## II. REPORT

### A. FACTUAL AND PROCEDURAL BACKGROUND

Beginning on September 9, 2004, Ingraham was employed as a Behavior Specialist for the Auberle & Pauline Auberle Foundation (collectively "Auberele"). Auberle provided long-term disability benefits to its employees through a policy issued to his employer by Prudential ("the Plan"). In June 2008, at the age of 49, Ingraham was involved in a motor vehicle accident, which aggravated a pre-existing back condition, leaving him with thoracic and lumbosacral pain, associated leg weakness and neck pain. As a result of his injuries, on October 25, 2008, Ingraham provided notice to Prudential of a claim for long-term disability benefits, which was approved on December 23, 2008, effective September 15, 2008. As set forth in the letter approving his long-term disability claim, Ingraham's "Scheduled Benefit" was $1,204.09, or 66.67% of his "Monthly Salary."[1] [ECF No. 17-2].

Ingraham was injured in a second motor vehicle accident in October 16, 2009, which resulted in an exacerbation of some of his earlier symptoms as well as new complaints of neck, shoulder and left arm pain. Ingraham continued to receive benefits at the same level as originally calculated until September 2, 2010, when Prudential notified Ingraham that his benefits would be terminated. Prudential informed Ingraham that pursuant to the terms of the policy, during the initial 24 month payment period, he was entitled to benefits for disability from

---

[1] Upon a determination of disability, Prudential calculated Plaintiff's monthly payment of benefits as follows:

We will follow this process to figure out your monthly payment:

1. Multiply your monthly earnings by 66 2/3%.
2. The maximum monthly benefit is $3,000.00.
3. Compare the answer in item 1 with the maximum monthly benefit. The lesser of these two amounts is your gross disability payment.
4. Subtract from your gross disability payment any deductible sources of income.

That amount figured in item 4 is your monthly payment.

[ECF No. 17-1, p. 14].

his "own occupation." However, after 24 months, Ingraham would qualify for continued benefits only if he could not "perform the duties of any *gainful occupation"* for which he was "reasonably fitted by education, training or experience." [ECF No. 17-2 (emphasis in original)]. Prudential disclosed that it had determined that Ingraham was capable of gainful employment in a different field and, accordingly, Prudential informed Ingraham that his benefits would be terminated.[2] On February 9, 2011, Ingraham filed an appeal of the termination of his benefits.

The Plan provides for two levels of appeals, which are set forth in the Summary Plan Description. [ECF No. 17-1, 41-47]. Pursuant to the defined appeals process, Prudential has the authority to make initial claim determinations and to decide first-level appeals, using "individuals not involved in the initial benefit determination." [ECF No. 17-1, pp. 42 – 43]. A claimant's first-level appeal must be made in writing to Prudential within 180 days, and, barring special circumstances, Prudential is afforded 45 days to decide the appeal. If the first-level appeal is denied, a claimant has the option to file a civil suit or, within 180 days of the denial of the first-level appeal, to bring a "second-level appeal." If a claimant choses to bring a civil action, the Plan provides a time limit for legal proceedings, as follows:

---

[2] Pursuant to the terms of the policy at issue, long-term disability benefits were payable if a policy holder is "disabled" as follows:
You are disabled when Prudential determines that:

- you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and

- you are under the regular care or a doctor; and

- you have a 20% or more loss in your monthly earnings due to that sickness or injury

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury:

- you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience; and

- you are under the regular care of a doctor.

[ECF No. 17-1, p. 12].

3

> You can start legal action regarding your claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided by law.

[ECF No. 17-1, p. 33]. Pursuant to the Summary Plan Description, however, the limitations period may be tolled in the event a second-level appeal is filed, for the pendency of the appeal:

> If you elect to initiate a lawsuit without submitting to a second level of appeal, the plan waives any right to assert that you failed to exhaust administrative remedies. If you elect to submit the dispute to the second level of appeal, the plan agrees that any statute of limitations or other defense based on timeliness is tolled during the time that the appeal is pending.

[ECF 8-1, p. 3].

According to the Amended Complaint, Plaintiff's initial first-level appeal challenged Prudential's determination that Ingraham was functionally capable of performing tasks related to sedentary employment as a cashier or companion. [ECF No. 5, ¶ 16]. On March 31, 2011, Prudential informed Ingraham that based upon the opinion of an external physician who reviewed Ingraham's medical records, Ingraham "was able to perform alternative gainful occupations of a sedentary nature." [ECF No. 5, ¶ 17]. Ingraham filed a second-level appeal on September 30, 2011, challenging the alternative occupation determination and, for the first time, Ingraham challenged Prudential's calculation of his "gainful wage," as it had been calculated in December 2008. [ECF No. 5, ¶ 18]. Ingraham's appeal was resolved on January 1, 2012, and resulted in a finding that Ingraham was disabled from "any gainful employment." Accordingly, Ingraham was notified that his benefits would be reinstated and continued for as long as he remained "disabled" within the Plan definition.

However, with regard to Ingraham's appeal of the calculation of his wage calculation, Prudential stated:

> In your letter of appeal dated September 30, 2011, you continue to dispute Prudential's gainful wage calculation and the policies (sic) definition of monthly

earnings. You take the position that "The language of the monthly earnings paragraph must be strictly construed. The rule in these cases is that there is language capable of conflicting meanings, the language is construed, against the make of the instrument. Therefore "income received from commissions, bonuses, overtime pay (or) any other extra compensation" would not refer to earnings from the employer." You report Mr. Ingraham had a monthly earnings of over $5,000 through June 2008 when he became disabled so a gainful wage of $6.95 is not accurate. However, you fail to provide your calculation of what you believe Mr. Ingraham's gainful wage should be. Furthermore, you have not provided Prudential with any financial documentation supporting your position that Mr. Ingraham made over $5,000 per month from his Employer. Therefore, we maintain our position based on the wage data reported by Mr. Ingraham's Employer and as outlined in our September 15, 2011 letter to you which states the following:

"Based on the claim file data, Mr. Ingraham stopped working on June 17, 2008, and subsequently submitted a claim for Total Disability Benefits. In 2008, at the time of Mr. Ingraham's claim submission his Employer reported his hourly wage as $10.42 per hour, thus taking 66 2/3% of this equate to $6.95 per hour as a gainful wage."

[ECF No. 9-2 (grammar and punctuation errors in original)]. Accordingly, Prudential denied Ingraham's initial appeal of his wage calculation (filed in conjunction with his second-level appeal of the "any gainful employment" determination). Ingraham filed this action on May 22, 2012; three years and five months after Prudential first notified him of the wage calculation on December 23, 2008.

### B. STANDARD OF REVIEW

A motion for judgment on the pleadings under Fed. R. Civ. Proc. 12(c) may be granted when "the movant clearly establishes that no material issue of fact remains to be resolved" and that it is "entitled to judgment as a matter of law." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008); see also Sheridan v. NGK Metals Corp., 609 F.3d 239, 259 n. 25 (3d Cir. 2010). The court construes the facts presented in the pleadings and the inferences drawn therefrom in the light most favorable to the non-moving party. Id.; see also Sikirica v. Nationwide Ins. Co.,

416 F.3d 214, 219 (3d Cir. 2005). The court may consider undisputedly authentic documents attached to or submitted with the complaint, as well as evidence outside the complaint/other items of record. See, e.g., Wiseman Oil Co., Inc. v. TIG Ins. Co., 878 F. Supp. 2d 597, 600-01 (W.D. Pa. 2012)(citing Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994)).

### C. DISCUSSION

Prudential seeks the entry of judgment in its favor as a matter of law on the ground that the Plan requires legal actions to be commenced within three years of a claim decision and the Plaintiff did not commence this action until, at the earliest, May 22, 2012, three years and four months after receiving notice of Prudential's calculation of his gross long term disability benefit. As a result, Prudential asserts that this action is time barred. Ingraham raises four arguments in opposition to Prudential's claim that this action was filed late:

1. Ingraham's claim did not "accrue" until Prudential denied his wage calculation appeal on January 1, 2012;

2. Ingraham had not exhausted his administrative remedies as to his wage calculation claim until January 1, 2012, and so could not sue until the denial of his claim was received;

3. Ingraham is entitled to the benefit of the tolling provision set forth in the Summary Plan Description during the pendency of his second-level appeal and as such, his action is timely; and,

4. Prudential's invitation to Ingraham in its January 1, 2012, correspondence to submit copies of his employment and payroll information for review equitably estops it from resorting to the three year limitation of action provision.

As more fully set forth below, Prudential is entitled to the entry of judgment in its favor as a matter of law.

6

1. **Accrual of Wage Calculation Claim**

Ingraham's Amended Complaint sets forth a non-fiduciary ERISA claim seeking an adjustment of benefits under 29 U.S.C. § 1132(a)(1)(B). [ECF No. 5, ¶ 22]. ERISA does not contain an explicit statute of limitations for non-fiduciary benefit claims brought under this provision. Miller v. Fortis Benefits Ins. Co., 475 F.3d 516, 520 (3d Cir. 2007). "As a general rule, when Congress omits a statute of limitations for a federal cause of action, courts 'borrow' the local time limitation most analogous to the case at hand. In the absence of an applicable ERISA limitation, the courts thus apply the statute of limitations for the state claim most analogous to the ERISA claim pursued." Gluck v. Unisys Corp., 960 F.2d 1168, 1179 (3d Cir. 1992) (citations and internal quotation marks omitted). The statutory limitation period most applicable to a claim for benefits due under a plan is that for a breach of contract claim. See id. at 1181-82. The statute of limitations for a breach of contract claim in Pennsylvania is four years. 42 Pa. Cons. Stat. § 5525(8). Parties may, however, contract for a shorter limitation period, so long as the contractual period is not manifestly unreasonable. See Koert v. GE Group Life Assur. Co., 231 F. App'x 117, 119-20 (3d Cir. 2007) (citing Lardas v. Underwriters Ins. Co., 426 Pa. 47, 231 A.2d 740, 741-42 (1967); Hosp. Support Servs., Ltd. v. Kemper Group, Inc., 889 F.2d 1311 (3d Cir.1989)). In this case, the parties agree that the Plan's three year limitation on action period is reasonable and applies to Ingraham's claim. The parties' disagreement rests with the accrual date for Ingraham's claim regarding his wage calculation and, therefore, whether Ingraham's action was timely filed.

The timing of accrual for benefit calculations has been addressed by the United States Court of Appeals for the Third Circuit in Miller v. Fortis Benefits Ins. Co., 475 F.3d at 520. In Miller, the Court of Appeals held that the date of accrual will be measured by the federal

discovery rule. Id. (citing, Romero v. Allstate Corp., 404 F.3d 212, 222 (3d Cir. 2005)). "Under this rule, a statute of limitations begins to run when a plaintiff discovers or should have discovered the injury that forms the basis of his claim." Id.

> In the ERISA context, the discovery rule has been developed into the more specific "clear repudiation" rule whereby a non-fiduciary cause of action accrues when a claim for benefits has been denied. Notably, a *formal* denial is not required if there has already been a repudiation of the benefits by the fiduciary which was clear and made known the beneficiary. In other words, some "event other than a denial of a claim" may trigger the statute of limitations by clearly alerting the plaintiff that his entitlement to benefits has been repudiated."

Id. (quoting Romero, at 223 (internal citations omitted, emphasis in original)). The Court of Appeals observed that receipt of an erroneously calculated award of benefits under an ERISA plan can serve as "an event other than a denial" that triggers the statute of limitations, as long as it is (1) a repudiation (2) that is clear and made known to the beneficiary."

> Regarding the first requirement, an underpayment can qualify as a repudiation because a plan's determination that a beneficiary receive less than his full entitlement is effectively a partial denial of benefits. Like a denial, an underpayment is adverse to the beneficiary and therefore repudiates his rights under a plan. Regarding the second requirement, repudiation by underpayment should ordinarily be made known to the beneficiary when he first receives his miscalculated benefit award. See Gluck , 960 F.2d at 1180-81 ("[A]n employee's receipt of diminished payment gives immediate, obvious notice to an employee that something is amiss....").

Id. at 521-522.

In Miller, the plaintiff became disabled after heart surgery and collected long-term disability benefits from his employer. Prior to his surgery, he had worked as a casino floor worker and as an outside marketing salesman, which paid more than the job as a casino floor worker. Id. at 518. From the very first payment, his long-term disability benefits were erroneously based on his lower salary as a casino floor worker, not his higher salary as a salesman. Id. Miller did not realize the error in his monthly benefits until fifteen years later. Id.

8

The Court of Appeals found that Miller's benefits had been clearly repudiated from his receipt of the very first erroneously-calculated check. Id. at 521-22. The Court of Appeals reasoned that because Miller had not challenged the notice of his rights under the plan, his claim had accrued from his receipt of the first check where denial of any greater benefit implicit in an underpayment sufficed to notify him of his injury. "Without any indication of deficient notice, a beneficiary's receipt of an award is sufficient to inform him that the plan has determined his benefit." Id. at 522-23.

As in Miller, Prudential's letter of December 23, 2008, clearly set forth the method used to calculate Ingraham's monthly benefit as well as the amount of his monthly earnings. If Ingraham's monthly earnings were $5,000.00, then Prudential's correspondence listing monthly earnings of $1,806.13 provided clear notice of a repudiation of higher benefits. [ECF Nos. 9-2, 17-2]. At that point, Ingraham's claim accrued and he was required to exercise reasonable diligence to ensure the accuracy of his award. Miller, at 522.

Ingraham seeks to limit the reach of Miller to the facts presented to the Court of Appeals; specifically, the fact that Miller waited over fifteen years to challenge his wage calculation. Ingraham contends he has not been so dilatory; and, at worst, under the terms of the Plan, his claim is a mere six months late and this seemingly minor delay should not preclude his action. This argument ignores the crucial holding in Miller, i.e., that a benefit recipient is required to be vigilant and act upon the inaccuracy of award in a timely manner, and certainly before the expiration of the applicable limitations period.

In the alternative, Ingraham argues that his claim did not accrue until September 2, 2010, when Prudential terminated his long-term disability benefits. Prudential responds that Ingraham is improperly "conflating" the September 2010 denial of benefits with the 2008 wage calculation,

especially given that Ingraham failed to raise the wage calculation claim in his first-level benefit termination appeal, submitted on February 9, 2011. This Court agrees. First, Ingraham's receipt of the December 23, 2008, letter served as notice of his allegedly erroneous wage calculation and independently triggered the limitations period on the wage calculation claim. Miller, supra. Second, the September 2, 2010, denial of benefits did not address any challenge to Ingraham's wage calculation, but, instead, was predicated upon Prudential's determination that Ingraham was not disabled from "any gainful employment." Ingraham's first-level appeal challenged only Prudential's disability finding, and did not raise any grounds to alter or amend the 2008 wage calculation. Therefore, the September 2, 2010, termination of long term disability benefits does not affect the conclusion that Ingraham's wage calculation claim accrued almost two years earlier, on December 23, 2008.

### 2. Tolling

To avoid the three year limitations provision set forth in the Plan, Ingraham argues that the Plan limitations period was tolled by either (1) Prudential's failure to provide instructions to appeal the original wage calculation in September 2008; (2) the submission of the September 30, 2011, second-level appeal of Prudential's benefit termination, triggering the tolling provision in his employer's Summary Plan Description ("SPD"); or, (3) equitable tolling, arising from Prudential's January 2012 invitation to submit documentation supporting Plaintiff's claims that the wage calculation was incorrect.

As to Ingraham's first contention, the United States Court of Appeals for the Third Circuit in Miller specifically rejected an approach that required a delineated denial of benefits and appeals process to trigger accrual of a wage calculation claim. To the contrary, the Court of Appeals held that "a beneficiary's receipt of an award is sufficient to inform him that the plan

10

has determined his entitlement." Miller, at 523. Here, Prudential's notification on December 23, 2008, stated that Ingraham's monthly benefits were calculated from his "Monthly Salary" of $1,806.13. [ECF No. 17-2, p.2]. This was sufficient notice that Ingraham's benefits did not include overtime wages, significantly reducing his claims of entitlement to approximately $5,000.00 per month. As in Miller, this was sufficient to trigger notice to Ingraham to safeguard his rights under the Plan and, at a minimum, abide by the instructions set forth in the letter to contact Prudential if he had any questions concerning the decision as to his claim. [ECF No. 17-2, p. 4]. The award letter also satisfies ERISA's notice requirements under 29 U.S.C. § 1133, in that the specific basis for the salary figure is set forth, along with appropriate information as to the steps Ingraham could have taken to obtain review of the wage calculation. See, e.g., Koert v. GE Group Life Assur. Co., 416 F. Supp. 2d 319, 323-324 (E.D. Pa. 2005) (a specific notice of redress is not required; instead, letter setting for why benefits for denied, and how denial was in accordance with the plan, as well as method to contact administrator for review satisfies ERISA). Finally, Ingraham retained counsel, who filed the benefit termination appeal before the expiration of the limitations period. Plaintiff's wage calculation claim could have been well protected at that point by asserting any purported errors or omissions. Ingraham's failure to do so cannot be attributed to Prudential.

In the alternative, Plaintiff contends that the September 30, 2011, second-level appeal as to his benefits termination triggered the Summary Plan Description tolling provision. In response, Prudential argues that reliance on the Summary Plan Description's tolling provision is misplaced because the September 30, 2011, second-level appeal as to benefits termination only constituted Ingraham's first-level appeal as to the wage calculation. As such, on its own terms, the tolling provision does not apply. The Court agrees. As alleged in Ingraham's Amended

Complaint, his first appeal of the wage calculation occurred in conjunction with his submission of the September 30, 2011, second-level appeal of the termination of his benefits. Accordingly, the Summary Plan Description tolling provision is not implicated as to this first appeal of Prudential's wage calculation.

Finally, Plaintiff contends that Prudential's January 1, 2012, invitation to Ingraham to submit employment information for review equitably tolls the three year limitation on actions. In the ERISA context, the United States Court of Appeals for the Third Circuit, reaffirming its holding in Miller, held that for equitable estoppel to toll a statute of limitations, there must be "extraordinary circumstances" that demonstrate ongoing fraud on the part of the insurer:

> To demonstrate equitable estoppel, Kapp must show, inter alia, "extraordinary circumstances." Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 235 (3d Cir. 1994). We have never "clearly defined 'extraordinary circumstances,' " but instead "rely[ ] on case law to establish its parameters." Kurz v. Philadelphia Elec. Co., 96 F.3d 1544, 1553 (3d Cir. 1996). For example, we have found extraordinary circumstances where there are "affirmative acts of fraud or similarly inequitable conduct by an employer [,]" or a "network of misrepresentations that arises over an extended course of dealing between parties[,]" and we also consider "the vulnerability of particular plaintiffs." Id. See also Pell v. E.I. DuPont de Nemours & Co., 539 F.3d 292, 304 (3d Cir. 2008) (holding extraordinary circumstances when considering "repeated affirmative misrepresentations, combined with [plaintiff's] diligence" "over an extended course of dealing").

Kapp v. Trucking Employees of N. Jersey Welfare Fund, Inc.--Pension Fund, 426 F. App'x 126, 130 (3d Cir. 2011). Here, no facts have been alleged or established through the pleadings or the attached correspondence upon which a finding of fraud or similarly inequitable conduct can be based. Absent extraordinary circumstances, the claim is barred by the Plan's express provision requiring that legal actions be commenced within three years.

## D. CONCLUSION

In the absence of material issue of fact, and because it appears that Prudential is entitled to judgment in its favor as a matter of law, it is respectfully recommended that the Motion for Judgment on the Pleadings [ECF No. 16] be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: March 8, 2013

cc: The Honorable Cathy Bissoon
United States District Judge

All counsel of record by Notice of Electronic Filing